United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SERGEY FIRSOV, et al.,
Plaintiffs,
v.
TURKISH AIRLINES INC., et al.,
Defendants.

Case No. 26-cv-00304-JSC

**ORDER RE: DEFENDANTS' MOTIONS TO DISMISS, PLAINTIFFS' MOTIONS TO AMEND, TO RECOVER THE COSTS OF SUMMONS, AND FOR DEFAULT JUDGMENT**

Re: Dkt. Nos. 11, 13, 17, 19, 30, 48

Plaintiffs Sergey Firsov and Iana Rodionova, proceeding without attorney representation, bring several claims arising out of several international flights. (Dkt. No. 1.)[1] Two defendants are airlines: Turkish Airlines, Inc. and Aerovias Del Continento Americano S.A. Avianca ("Avianca"). The other two defendants, Sabre GLBL, Inc. ("Sabre") and Amadeus North America ("Amadeus"), are companies which operate globally-used software for airline bookings. Plaintiffs allege the airline defendants advised them to purchase fake flight tickets and discriminated against Plaintiffs because they had Russian passports. Plaintiffs bring claims against the software company defendants based on the airlines' conduct and the companies' removal of Russian airlines from the software.

Pending before the Court are three Defendants' motions to dismiss and Plaintiffs' motions to amend their complaint, to recover the costs of formal summons against, and for default judgment against Avianca. (Dkt. Nos. 11, 13, 17, 19, 30, 48.) After carefully considering the parties' submissions, the Court GRANTS Defendants' motions to dismiss, GRANTS Plaintiffs' motion to recover the cost of formal summons only as to Amadeus, and DENIES Plaintiffs'

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

remaining motions for the reasons set forth below. As amendment would be futile and Plaintiffs' claims are frivolous, dismissal is without leave to amend. Additionally, if Plaintiffs intend to request the clerk enter default against Avianca, they must do so by July 29, 2026.

## BACKGROUND

### I. Mr. Firsov's "Abusive" Litigation Campaign Against Airlines

On June 23, 2026, after Plaintiffs filed the instant suit, Judge Chen granted a motion by a Scandinavian airline to declare Mr. Firsov a vexatious litigant and entered a pre-filing order against Mr. Firsov. (*Sergey Firsov v. Scandinavian Airlines System Denmark-Norway-Sweden*, No. 25-cv-03691-EMC; Dkt. No. 113.) In that case, Mr. Firsov "complained about being served a vegetarian meal because he is a man and needs to eat meat." (*Id.* at 21.) Judge Chen noted "Mr. Firsov has filed 30 cases in this District" between March 26, 2025 and June 1, 2026. (*Id.* at 2.) All but 3 of those cases named at least one airline as a defendant and two-thirds are now closed. (*Id.*) Judge Chen recounted Mr. Firsov's "abusive" litigation tactics and frivolous allegations in his many suits against airlines, then entered an order "requir[ing] prefiling review […] where a named defendant is an airline." (*Id.* at 19-22.) "Any action filed in violation of th[e] order will be subject to sua sponte dismissal." (*Id.* at 22.)

### II. Plaintiffs' Allegations

Plaintiffs took several international flights throughout 2025 and 2026, beginning with a departure from San Francisco. (Dkt. No. 1 at 4-5, 14.) To view their bookings, Plaintiffs used "Global Distribution System (GDS)," a "travel industry software" owned by Defendants Sabre and Amadeus which "connects travel agencies to airlines." (*See id.* at 12-14.) Defendants Sabre and Amadeus promised the software would be "global" and "support all airlines" and "all passengers." (*Id.* at 12-13.) But, in response to Western countries' imposing economic sanctions against Russia, Sabre and Amadeus made a "political decision" to "remov[e] all Russian airlines from" the platform and to "not provide[ an] alternative [for] airlines to check bookings" going into Russia. (*Id.* at 12-13.)

In December 2025, Plaintiffs arrived at an airport in Panama "to drop-off baggage" for a flight to Chile, but Defendant "Avianca refused" to check Plaintiffs in, "forced everyone to use

United States District Court
Northern District of California

ATM to bring boarding pass/baggage tag," and "refused to pickup baggage due to [Plaintiffs'] Russian passports." (*Id.* at 4 (cleaned up).) Plaintiffs pleaded with Avianca to get onto their flight, but, among other difficulties, Plaintiffs' screenshot of their booking did not have a ticket number and Plaintiffs "were not able to open [the] airline App and show [their] ticket" due to "bad internet." (*Id.* at 4-5.) During back-and-forth discussions with Plaintiffs, Avianca repeatedly "denied boarding" then "adviced [sic] to make a fake purchase of refundable ticket and 'fool' Chile." (*Id.* at 5.) "Plaintiffs showed [a] screenshot" of a "fake ticket" to Avianca "and after that Avianca allowed to board [sic]." (*Id.* at 5; *see id.* at 6-7.)

A similar incident took place nearly two weeks later, but only involving Ms. Rodionova. On January 3, 2026, in Bogota, Colombia, a representative of Turkish Airlines "called [her] to came-in to check documents" and "demanded a return ticket from Kazakhstan to Russia" because her ticket was one-way. (*Id.* at 5.) The representative initially "denied boarding" and "started deboarding of baggage," which Ms. Rodionova asserts is "discriminat[ion]" due to her Russian origin. (*Id.*) Subsequently, a Russian-speaking Turkish Airlines representative approached her and "adviced [sic] to purchase fake return ticket to 'fool' Kazakhstan." (*Id.*) Ms. Rodionova then showed a screenshot of a fake ticket and was "allowed to board" her flight. (*See id.* at 5-7.)

Plaintiffs bring 11 claims, seven of which are against Turkish Airlines and Avianca:

(1) "Delay passenger and baggage" under the 1999 Montreal Convention and the Airline Deregulatory Act of 1978 ("ADA"),

(2) "Civil rights, discrimination, fraud, integrity of board control system,"

(3) "Fraud,"

(4) "Unfair and deceptive business practices" under the ADA and California's Consumer Legal Remedies Act,

(5) "Breach of international contract,"

(6) "Intentional Infliction of Emotional Distress (IIED)," and

(11) "Covenant of good faith and fair dealing."

(*Id.* at 6-11 (cleaned up).) Plaintiffs request over $2.5 billion in punitive damages. (*Id.* at 11.)

Plaintiffs' remaining claims are against Sabre and Amadeus:

(7) "Detrimental reliance / promissory estoppel,"

(8) "Tortious interference with international contracts under Montreal convention,"

(9) "False advertising under ADA 1978," and

(10) "California UCL – unfair and deceptive business practices under ADA 1978."

(*Id.* at 12-15.) Plaintiffs assert Sabre's and Amadeus's decision to remove Russian airlines from its software made the software "local," which contravenes the companies' promises and advertisements of a "global" software. (*Id.* at 14 (cleaned up).) Additionally, the removal of Russian airlines and bookings led to Turkish Airlines and Avianca initially refusing to let Plaintiffs board their flights. (*Id.* at 13.)

***

Defendants Turkish Airlines,[2] Sabre, and Amadeus move to dismiss Plaintiffs' complaint. (Dkt. Nos. 17, 19, 42.)

**DISCUSSION**

**I. Motions to Dismiss and for Leave to Amend**

**A. The Court Does Not Have Personal Jurisdiction Over Turkish Airlines**

Turkish Airlines moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), asserting the Court does not have personal jurisdiction over it. Plaintiffs bear the burden of demonstrating that the Court has jurisdiction over Turkish Airlines. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). The Court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). To make a prima facie showing, Plaintiffs "need only demonstrate

[2] The motion was filed by Turk Hava Yollario A.O. ("THY"), specially appearing on behalf of Turkish Airlines. (Dkt. No. 17 at 1 n.1.) THY believes Plaintiffs intended sue it, not Turkish Airlines, because it is "the national flag carrier of Turkey and operates under the trade name 'Turkish Airlines.'" (*Id.*; Dkt. No. 17-1 ¶ 3.) Turkish Airlines, by contrast, is "not an air carrier;" it is a "paper corporation" based in New York which "does not have any employees or assets." (Dkt. No. 17-1 ¶ 4.) For simplicity's sake, the Court refers to the movant as Turkish Airlines.

facts that if true would support jurisdiction over" Turkish Airlines. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Uncontroverted allegations in the complaint must be taken as true," and inferences from those allegations "must be resolved in [Plaintiffs'] favor." *Love*, 611 F.3d at 608. But courts are "not required to accept as true conclusory allegations[.]" *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Courts may dismiss a complaint when "a plaintiff […] plead[s] himself out of a claim by including […] details contrary to his claims." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law in which the district court sits." *Schwarzenegger*, 374 F.3d at 800.

> Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

*Id.* at 800–01 (cleaned up). Courts have general personal jurisdiction over a defendant engaged in "continuous and systematic general business contacts" which "approximate physical presence in the forum state," and have specific personal jurisdiction when a defendant purposefully avails itself of the privilege of doing benefits in California and Plaintiffs' claims arise out of or relate to the defendant's forum-related activities. *Id.* at 801–03.

Drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged facts sufficient to support an inference the Court has general or specific personal jurisdiction over Turkish Airlines. Plaintiffs have not alleged any facts regarding Turkish Airlines' contacts with the United States, except that its address is in New York City and the conclusory allegation "Defendants have regular flights to/from California and doing business here." (*See* Dkt. No. 1 at 1, 6; *see generally id.*) So, drawing inferences in Plaintiffs' favor, Plaintiffs' do not allege facts that plausibly support an inference Turkish Airlines has "continuous and systematic" contacts which "approximate physical presence" in California. *Schwarzenegger*, 374 F.3d at 801. Moreover, Plaintiffs' allegations do not support an inference the Court has specific jurisdiction over Turkish Airlines because drawing inferences in Plaintiffs' favor, Plaintiffs' claims do not arise out of

Turkish Airlines' contacts with California. Plaintiffs allege they took several international flights, but only one flight involves Turkish Airlines, and that flight routed from Chile to Kazakhstan. (*See id.* at 4-5.) Consequently, Turkish Airlines' motion must be granted.

Because the Court grants Turkish Airlines' motion on jurisdictional grounds, the Court does not reach Turkish Airlines' arguments regarding improper service, improper venue, preemption, and failure to state a claim.

### B. Sabre's and Amadeus's Motions to Dismiss

Plaintiffs' claims against Sabre and Amadeus are primarily rooted in California law. (*See* Dkt. No. 1 at 6-15 (alleging Plaintiffs live in California, referencing common law claims, and citing various California statutes).) Plaintiffs also style their claims "under" the ADA and the Montreal Convention. (*See generally id.*; *see id.* at 3 (asserting federal question subject matter jurisdiction under the ADA and the Montreal Convention); 6 (asserting the ADA "provides framework [sic] to sue any airline in federal court for breach of contract").)

Sabre and Amadeus contend neither the ADA nor the Montreal Convention provides Plaintiffs a private right of action against companies that operate travel booking software, and Plaintiffs' state-law claims fail to state a claim.[3]

#### i. Plaintiffs Do Not Have a Cause of Action Under the ADA or the Montreal Convention

Plaintiffs incorrectly assert the ADA allows them "to sue any airline in federal court for breach of contract." (*Id.* at 6.) Across their complaint and several opposition filings, Plaintiffs do

---

[3] Sabre and Amadeus also argue the ADA preempts Plaintiffs' claims. The ADA provides a state "may not enact or enforce any law, regulation, or other provision having the force and effect of law related to rates, routes, or services **of an air carrier**[.]" 49 U.S.C. § 41713(b)(1) (emphasis added). But Sabre and Amadeus are not air carriers; the complaint expressly alleges they operate the GDS software. Sabre and Amadeus nonetheless assert "ADA preemption extends to claims against entities that are 'not air carriers themselves' when those claims have a 'significant economic effect' on airline services." (Dkt. No 19-1 at 4 (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996)).) The only ADA preemption case Sabra and Amadeus cite is *Travel*, which did not address whether the ADA preempts claims against entities which are not air carriers. The phrase "not air carriers themselves" appears nowhere in the opinion and the defendant there was a Saudi Arabian airline company. *See Travel*, 73 F.3d at 1428 n.1; *see generally id.* Given Sabre and Amadeus do not cite any authority for their argument the ADA preempts claims brought against entities which are not air carriers, the Court does not discuss ADA preemption.

United States District Court
Northern District of California

not cite any case or statutory text for this argument. The ADA does not have a provision authorizing breach of contract suits to be brought directly under the statute. *See generally* 49 U.S.C. §§ 47101-41729; *see also Buck v. Am Airlines, Inc.*, 476 F.3d 29, 34 (1st Cir. 2007) (collecting cases which held the ADA's consumer protection provisions do not create an implied private right of action). Rather, it appears Plaintiffs are referring to case law holding the ADA does not preempt state-law breach-of-contract claims. *See, e.g.*, *American Airlines Inc., v. Wolens*, 513 U.S. 219, 228–33 (1995); *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1063 (9th Cir. 2017) ("[I]f [Plaintiff] adequately pleaded breach of contract, then her claim is not preempted. The Supreme Court's subsequent *Northwest, Inc. v. Ginsberg* decision did not change the *Wolens* rule that state law breach of contract claims are not preempted.") These cases did not hold the ADA authorizes contract claims; they held the ADA does not preempt such claims. Therefore, to the extent Plaintiffs assert claims directly under the ADA, the Court grants Defendants' motions to dismiss those claims.

Plaintiffs also appear to bring claims directly under the Montreal Convention of 1999, but to the extent the treaty authorizes Plaintiffs to sue in federal court, drawing all inferences in Plaintiffs' favor, Plaintiffs' allegations do not support an inference the treaty applies to Sabre's and Amadeus's alleged conduct. The article defining the treaty's "scope of application" provides the treaty "applies to all international carriage of persons, baggage, or cargo performed by aircraft for reward." Montreal Convention of 1999, Ch. I, Art. I. Additionally, the treaty imposes "duties" upon international carriers, and the duties pertains to cargo deliveries, injuries that occur "on board the aircraft," "damage to cargo" which takes place "during the carriage" of cargo, and carriage delays. *See generally id.* Ch. II, Arts. 3-16; Ch. III, Arts. 17-21. Accordingly, the Convention "provides the exclusive remedy for international passengers seeking damages against airline carriers." *Narayanan v. Brit. Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014). Drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged facts showing Sabre and Amadeus are engaged in "international carriage of persons, baggage, or cargo" such that they have duties under the treaty because Plaintiffs allege Sabre and Amadeus created and took actions within a "travel industry software" for viewing flight bookings. (Dkt. No. 1 at 12-14.) So, the Court grants Defendants'

motions to dismiss Plaintiffs' claims under the Montreal Convention.

**ii. Detrimental Reliance / Promissory Estoppel**

Under California law, a claim for promissory estoppel requires Plaintiffs to allege (1) Sabre and Amadeus made a "clear and unambiguous" promise, (2) Plaintiffs relied on the promise, (3) Plaintiffs' reliance was "both reasonable and foreseeable," and (4) Plaintiffs were "injured by" their reliance. *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 889 (1976). Sabre and Amadeus argue Plaintiffs' allegations do not satisfy any of these elements.

Drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged facts sufficient to support an inference Sabre and Amadeus made a "clear and unambiguous" promise to Plaintiffs. *Id.* Plaintiffs allege Sabre and Amadeus "promised to support world [sic]" and "promised to support all airlines, all passengers, travel agents" through the GDS software. (Dkt. No. 1 at 12.) A vague promise to "support" airlines and passengers is not "clear and unambiguous" because "support" is a broad, ambiguous term; to "support" someone means "to promote the interests of" them. *See Merriam-Webster*, "support," https://www.merriam-webster.com/dictionary/support (last visited July 14, 2026). Plaintiffs also do not allege the exact words of this promise, its contours, or any circumstances surrounding Defendants' statements containing this promise. Therefore, drawing inferences in Plaintiffs' favor, Plaintiffs' allegations do not support an inference Sabre and Amadeus made a "clear and unambiguous" promise because the alleged promise does not have "sufficient definitiveness and clarity[] to justify applying promissory estoppel." *See Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1186 (1998).

Plaintiffs' allegations also do not permit an inference Plaintiffs reasonably relied on that promise to their detriment. Plaintiffs allege they "purchased" two "separate" one-way tickets with Turkish Airlines and Avianca in reliance on Sabre's and Amadeus's promise, which led to their boardings being delayed in Bogota and Chile, causing "emotional distress and financial lost [sic]." (Dkt. No. 1 at 12.) Plaintiffs do not allege why or attempt to explain how a decision to purchase one-way tickets was made in reliance on promises to "support the world" and support "all passengers," let alone why that decision is reasonable. Nor do Plaintiffs allege any facts in support of their allegation they suffered "emotional distress" and damages resulting from those

two separate one-way tickets, except that when they arrived at the airports for those flights, they were delayed in boarding those flights and somehow "lost all tickets/hotels" during those delays. (*Id.* at 8; *see generally id*.) But Plaintiffs expressly allege the airlines "allowed" them to board their flights and Plaintiffs successfully "visited multiple cities" during their trip. (*Id.* at 4-7.) Plaintiffs' allegations they suffered emotional distress and damages are therefore "conclusory" and "contradicted by" the complaint, meaning the Court is "not required to accept [them] as true." *Steckman*, 143 F.3d at 1295–96. Consequently, drawing inferences in Plaintiffs' favor, Plaintiffs' allegations do not permit an inference they reasonably relied on a promise to their detriment.

So, the Court grants Sabre's and Amadeus's motion as to Plaintiffs' promissory estoppel claim.

**iii. Tortious Interference with Contracts**

Under California law, a claim for tortious interference with a contract requires Plaintiffs allege "(1) a valid contract between [P]laintiff[s] and a third party; (2) [D]efendant[s'] knowledge of this contract; (3) [D]efendant[s'] intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1125 (1990). Sabre and Amadeus contend Plaintiffs have not alleged an "intentional act[] designed to induce a breach or disruption" or an "actual breach or disruption." The Court agrees.

Drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged facts sufficient to support an inference of an "actual breach or disruption of [a] contractual relationship" or an inference Sabre and Amadeus acted intentionally to induce such a breach or disruption. *Id.* Plaintiffs allege Sabre's and Amadeus's decision to remove Russian airlines interfered with Plaintiffs' flights. But Plaintiffs have not alleged any facts showing Sabre's and Amadeus's decision was "designed to" interfere with those flights. (*See generally* Dkt. No. 1 at 13.) Nor have Plaintiffs alleged an "actual breach or disruption" of their contracts for flights because Plaintiffs expressly allege they were allowed board their flights. (*Id.* at 4-7.) So, drawing inferences in Plaintiffs' favor, Plaintiffs' allegations do not permit an inference Sabre or Amadeus tortiously interfered with Plaintiffs' contracts.

United States District Court
Northern District of California

Accordingly, the Court dismisses Plaintiffs' tortious interference with contracts claim.

**iv. False Advertising Law ("FAL")**

Plaintiffs' false advertising claim requires Defendants made an "'untrue or misleading'" statement in connection with a sale of personal property which Plaintiffs relied on and which Defendants knew or should have known the statement was false or misleading. *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 300 n.3 (2014) (quoting Cal. Bus. & Prof. Code § 17500). California courts interpreting the FAL distinguish between false statements of fact, which are actionable, and "mere puffery or opinion." *Id.* at 311.

> "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery."

*Id.* (quoting *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)) (internal citations and quotation marks omitted).

Sabre and Amadeus correctly assert their alleged statements are mere puffery or opinion regarding the GDS software and therefore, drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged Sabre or Amadeus made false or misleading statements. Plaintiffs allege Sabre and Amadeus made two false or misleading statements: (1) a "promise[] to support all airlines, all passengers, [and] travel agents" "globally," and (2) the GDS software "connects business and people." (Dkt. No. 1 at 14.) Statements about the GDS software's ability to "support" and "connect" people are not "'quantifiable'" and do not "'make[] a claim as to the specific or absolute characteristics of'" GDS. *See Yelp*, 228 Cal. App. 4th at 311 (citing *Newcal*, 513 F.3d at 1053). So, Sabre's and Amadeus's alleged statements are not false or misleading as a matter of law. Therefore, Plaintiffs' false advertising claim must be dismissed because drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged facts sufficient to support an inference Sabre or Amadeus made false or misleading statements.

United States District Court
Northern District of California

**v. Unfair Competition Law ("UCL")**

Plaintiffs allege Sabre's and Amadeus's decision to remove Russian airlines from its software violates California's UCL, which "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus & Prof. Code § 17200). Plaintiffs' UCL claim is largely derivative of their other claims because an act is "unlawful" under the UCL when it violates another law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); (Dkt. No. 1 at 15 (referencing the companies' "intention interference [sic]" and asserting the UCL "allows consumers to sue for unlawful conduct").) So, the Court dismisses any UCL claims deriving from other dismissed claims. Additionally, to sue under the UCL, Plaintiff must have "standing," *i.e.*, they must "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact" and "(2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322 (italics in original).

Sabre and Amadeus argue Plaintiffs have not established standing under *Kwikset*. The Court agrees. Plaintiffs allege the companies' decision to remove Russian airlines from the platform was unfair and caused the delays in boarding their flights with Turkish Airlines and Avianca because the airlines' representatives were unable to see Plaintiffs' plane tickets purchased from Russian airlines. (Dkt. No. 1 at 15.) But, as explained above, Plaintiffs' allegations of damages and emotional distress are conclusory and contradicted by the complaint. As also explained above, drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged a statement that is false or misleading as a matter of law. So, drawing inferences in Plaintiffs' favor, Plaintiffs have not alleged facts supporting an inference they lost "money or property" sufficient to confer UCL standing, or an inference such an injury "was the result of" Sabre's and Amadeus's "false advertising" or their decision to remove Russian airlines from the GDS software. *Kwikset*, 51 Cal. 4th at 322.

Accordingly, the Court dismisses Plaintiffs' UCL claims.

//

### C. No Leave to Amend

Dismissal is without leave to amend as to all claims because amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs' opposition filings do not identify any allegations that, if accepted as true, would establish personal jurisdiction over Turkish Airlines. (*See* Dkt. No. 25 at 5-6 (conceding "Turkish airline has not any DIRECT contract with Plaintiff [sic]," arguing this concession "does not matter" because Plaintiffs can assert claims under the Montreal Convention, and requesting leave to amend simply "to substitute" Turkish Airlines' legal name); Dkt. No. 44 (addressing only Amadeus's arguments).) Additionally, Plaintiffs' motion for leave to amend proposes two new claims against the would-be Turkish Airlines defendant, but both claims are frivolous. The claims, labeled "fraud" and "USA/State business registration laws," allege Turkish Airlines falsely represented it is "incorporated in USA as Turkish Airlines" and the company "must register in California Secretary of state immmidiately [sic]." (*Id.* at 6-7.) Plaintiffs' proposed claims do not cite any federal or state statute, and instead broadly gesture to "States/USA revenue and Taxation codes." (*See id.*) Therefore, dismissal without leave to amend is appropriate. *Cf. Bradshaw v. MI5, Off. of Inspector Gen.*, No. 25-4397, 2026 WL 1258776, at *1 (9th Cir. May 7, 2026) (affirming sua sponte dismissal of pro se complaint without leave to amend because the plaintiff's claims were "wholly insubstantial and frivolous and thus fail[] to confer federal subject matter jurisdiction") (cleaned up); *see Lopez v. Smith*, 203 F.3d 1122, 1127 n.8 (9th Cir. 2000) ("When a case may be classified as frivolous or malicious, there is, by definition, no merit to the underlying action and so no reason to grant leave to amend.").

Likewise, amendment would be futile as to Plaintiffs' claims against Sabre and Amadeus. As explained above, the ADA does not provide a private right of action and the Montreal Convention does not authorize suits against companies like Sabre and Amadeus, so amending these claims would be futile. Additionally, Plaintiffs' motion for leave to amend does not include any new claims against Sabre. Rather, Plaintiffs propose adding a claim alleging Amadeus "failed to register" their business "in any state," meaning "all" of Amadeus's contracts are "void" and the company "must stop doing business in" the United States. (Dkt. No. 30 at 5 (cleaned up).) Like the proposed claims against Turkish Airlines, this claim does not cite any federal or state statute

and is frivolous. Accordingly, dismissal is without leave to amend.

**II. Motions to Recover Cost of Summons**

Federal Rule of Civil Procedure 4(d)(d)(1) provides "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d)(1). The plaintiff's "notice and request" for waiver "must," among other things, "be accompanied by […] a prepaid means for returning the form." *Id.* 4(d)(1)(C). This District's Local Rules also require a plaintiff's request for waiver of service to include a copy of the assigned judge's standing order and instructions for preparing a case management statement. N.D. Cal. Civ. L.R. 4-2(a)-(c).

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
>
> (A) the expenses later incurred in making service; and
>
> (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2)(A)-(B).

Plaintiffs request the Court require Turkish Airlines and Sabre to each pay $30.40, asserting they "personally served [their] Summons and Complaint" to the companies' "registered agent" on February 19, 2026 and April 2, 2026 and the defendants "refused to sign and return" a waiver of service. (Dkt. No. 11 at 1-2.) The Court denies Plaintiffs' motion. In both documents, a process server attests he served a summons on "Henry Liwag, who is designated by law to accept service on behalf of CT Corporation System" in Glendale, California. (*Id.* at 3, 4.) Turkish Airlines' attorney attests CT Corporation System is its agent for service, but the documents provided to CT Corporation System on April 2, 2026 did not include a request for waiver of service. (*See generally* Dkt. No. 32-3.) Nor did the documents served on either date include, as required by this District's Local Rules, a copy of the assigned judge's standing order and instructions for preparing a case management statement. (*See generally id.*; *see* Dkt. No. 32-1 ¶

United States District Court
Northern District of California

4.)

Plaintiffs also request the Court order Amadeus to pay $60 and order Avianca to pay $150 for refusing to return a waiver of service. (Dkt. No. 13.) Amadeus does not oppose the motion, (Dkt. No. 43), so the Court grants the motion only as to Amadeus and orders Amadeus to pay Plaintiffs $60. The Court denies the motion as to Avianca. Plaintiffs' proof of service upon Avianca is signed by someone who lives in Plaintiffs' apartment building. (*Compare id.* at 1 (caption showing Mr. Firsov's address), *with id.* at 9.) The declarant attests they served the Summons and Complaint on "supervisor ELiza [sic]," and this "supervisor" is the registered service agent of "LAX Airport, Aisle A, Departure level Aerovias Del Continente Americano S.A. Avianca." (*See id.* at 9.) Given Avianca has not appeared in this action, Mr. Firsov's abusive litigation history, and the declarant lives in Mr. Firsov's apartment and is not a registered process server, Plaintiffs' service upon Avianca by virtue of serving an airport employee is almost certainly defective.

**III. Motion for Default Judgment**

The Court denies Plaintiffs' motion for a default judgment against Avianca. (Dkt. No. 48.) A default judgment can be entered only *after* the clerk enters default. *See* Fed. R. Civ. P. 55(a) (providing "*the clerk* must enter default" when a party has "failed to plead or otherwise defend" a suit); *id.* 55(b)(1), (2) (outlining the clerk or the Court may enter a default judgment) (emphasis added). If Plaintiffs wish to request the clerk enter a default against Avianca, they must do so **by July 29, 2026**. If Plaintiffs do not do so, or if the clerk's office denies Plaintiffs' request for a default, the Court will dismiss Plaintiffs' claims against Avianca without prejudice.

**CONCLUSION**

As explained above, the Court dismisses Plaintiffs' complaint, without leave to amend. Drawing inferences in Plaintiffs' favor, Plaintiffs' allegations do not support an inference the Court has personal jurisdiction over Turkish Airlines. Nor do Plaintiffs' allegations support an inference Sabre or Amadeus are liable under the ADA, the Montreal Convention, tort theories, or California's FAL or UCL. The Court also grants Plaintiffs' motion to recover the cost of formal summons as to Amadeus, denies Plaintiffs' remaining motions to recover, and denies Plaintiffs'

motion for a default judgment. If Plaintiffs intend to request the clerk enter a default against Avianca, they must so request by July 29, 2026.

This Order disposes of Docket Nos. 11, 13, 17, 19, 30, and 48.

**IT IS SO ORDERED.**

Dated: July 15, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California